IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CV-888-SMY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Pamela F. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB on August 21, 2019, alleging a disability onset date of March 1, 2019 (Tr. 157-158). Her claim was initially denied on November 22, 2019 (Tr. 96-98) and denied again on reconsideration on June 19, 2020 (Tr. 102-106).

Plaintiff requested an evidentiary hearing which took place on November 16, 2020 (Tr. 34). Following the hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's application on December 7, 2020 (Tr. 27). The Appeals Council denied Plaintiff's request for review on June 7, 2021, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1).

**Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ erred by failing to properly evaluate the opinion of Plaintiff's treating rheumatologist, Sahithi Jarugula, M.D.

2. The ALJ erred by failing to address a proposed limitation to one and two step tasks.

3. The ALJ failed to properly evaluate Plaintiff's activities of daily living and past work.

Plaintiff separately raises a constitutional argument that the appointment of Andrew Saul as Commissioner of the Social Security Administration, with his removal only for cause, violates the separation of powers and renders Plaintiff's adverse social security decision constitutionally defective.

**Legal Standard**

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R.

§ 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date, despite earning money while working as a kennel caretaker and caring for a woman with a brain injury (Tr. 15-16). He found that Plaintiff had

the severe impairments of mild osteoarthritis, diabetes mellitus, fibromyalgia, and systemic lupus erythematosus (Tr. 16), but concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. Part 404 (Tr. 18).

The ALJ concluded as follows regarding Plaintiff's Residual Functional Capacity ("RFC"):

> Through the date last insured, the claimant had the residual functional capacity to perform a range of light work (20 CFR 404.1567(b); SSR 83-10). She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk about 6 hours each in an 8-hour workday. She could push and pull what she could lift and carry. The claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolding. She could occasionally balance, stoop, kneel, crouch, and crawl. She should have avoided concentrated exposure to extreme cold, extreme heat, wetness, and humidity.

(Tr. 19-20)

The ALJ credited the Vocational Expert's testimony and determined that Plaintiff was unable to perform any past relevant work, including work as a home health attendant and kennel caretaker (Tr. 25). However, he ultimately concluded that Plaintiff was not disabled because based on the RTC of light exertional work (SSR 83-10), she was able to perform the jobs of office helper, mail clerk, and sorter (Tr. 26).

The ALJ considered and discussed the findings of Plaintiff's providers, including Howard Tin, psychologist. He noted, "Howard Tin, PsyD found that the claimant had a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself" (Tr. 25). He did not address Tin's finding that Plaintiff could do one or two-step tasks. Regarding the adverse findings of two

state psychologists, the ALJ stated "[Their] findings are not consistent with nor supported by the evidence of record showing no formal mental health treatment" (Tr. 25).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1967 and was 51 years old on the alleged onset date of March 1, 2019 (Tr. 66). She filed for disability based on "osteoarthritis, lupus, fibromyalgia, diabetes (insulin dependent), irritable bowel syndrome, depression, gastroparesis, and COPD" (Tr. 66-67).

### Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on November 16, 2020 (Tr. 32) and testified to the following: Plaintiff's past work was at Addus Healthcare taking care of the elderly in their home and lifting over 20 or 25 pounds (Tr. 37). More recently, Plaintiff worked as a kennel caretaker cleaning cages (Tr. 38-39). She quit in 2019 after changing from full-time to part-time and no longer being able to perform the work (Tr. 39). Additionally, until January 2019, Plaintiff worked as a home health aide for a woman with a brain injury, helping to cook and clean and take her to appointments (Tr. 41). The ALJ questioned Plaintiff about an additional job delivering newspapers that she did with her husband (Tr. 42-43).

Upon examination by her attorney, Plaintiff noted that she is 5'8" and that her weight fluctuated between 195 to 210 (Tr. 45). She lives with her husband and has five grown children (Tr. 45-46). With respect to Plaintiff's impairments that affect her ability to work, she has

lupus, fibromyalgia, diabetes, osteoarthritis, irritable bowel syndrome, and gastroparesis (Tr. 47). Her lupus causes widespread pain, including to her knees, ankles, ribs, and even headaches (Tr. 48). It is exacerbated by trying to do housework (Tr. 49). Plaintiff suffers from fibromyalgia that causes her muscle pain (Tr. 50-51). She has neuropathy that causes pain when she uses her feet too much (Tr. 52) and osteoarthritis that affects her neck and spine (Tr. 52-53).

Upon examination by the ALJ, Plaintiff testified that her family doctor, Dr. Claire Williams, and rheumatologist, Dr. Drugle, told her not to push herself too much (Tr. 57). She wishes she could do more because she has "no desire, no energy, no nothing, no ability to really do anything" (Tr. 58).

Vocational Expert Jacquelyn Wenkman ("VE") testified that Plaintiff could no longer perform her past work but could perform several jobs in the national economy, including office helper, mail clerk, and sorter (Tr. 61). She clarified that were Plaintiff limited to sedentary work, she could no perform jobs in the national economy (Tr. 62). Plaintiff also could not find work if she was off task 25 percent of the time or absent from work for four or more days per month (Tr. 62). On questioning by the ALJ, the VE noted that if someone was restricted to occasional reaching and handling that would eliminate any unskilled labor (Tr. 63).

### Relevant Medical Records

Plaintiff first saw Dr. Sahitihi Jarugula on June 28, 2017 at Southern Illinois Healthcare (Tr. 270). She had been diagnosed with lupus and fibromyalgia and complained of constant pain (Tr. 270). Dr. Jarugula examined Plaintiff and diagnosed "systemic lupus erythematosus, unspecified SLE type, unspecified organ involvement status" and "fibromyalgia" (Tr. 276).

Plaintiff next saw Dr. Jarugula on March 20, 2019; Plaintiff reported that she noticed pain in her hands and lower back (Tr. 298). Plaintiff noted that she worked 3 jobs, 2 of which were difficult because they required cleaning and bending (Tr. 298). Dr. Jarugula found that Plaintiff had normal range of motion of the spine and normal findings in her shoulder/elbow, wrist/hand, hips/knees, and ankle/foot (Tr. 302). She diagnosed undifferentiated connective tissue disease with "mild lupus" and "no clinical concern for major organ involvement" (Tr. 303).

On June 27, 2019, Plaintiff had a visit at the Southern Illinois GI Specialists, LLC for a consultation after referral from her primary physician (Tr. 328). She was diagnosed with gastroesophageal reflux disease (Tr. 330).

On September 12, 2019, Plaintiff had a visit at Saint Francis Medical Center for an endocrinology clinic follow up for her diabetes (Tr. 413). She denied being sedentary (Tr. 413). She was diagnosed with poorly controlled type 2 diabetes mellitus with gastroparesis (Tr. 422).

On October 4, 2019, Plaintiff saw Dr. Jarugula for follow up. It was noted that she "Continues to do poorly at this time with pain especially in her neck lower back, hips and throughout the legs and sometimes feet with excessive activity" (Tr. 440). She had stabbing chest pain as well (Tr. 440). She was diagnosed with systemic lupus erythematosus, osteoarthritis of multiple joints, and fibromyalgia (Tr. 445).[1]

On October 29, 2019, Plaintiff had a psychological consultation with Dollean York-Anderson, Ph.D. in Carbondale, who found her responses to questions "coherent local, and

---

[1] According to the ALJ, Dr. Jarugula filled out a medical source statement on October 7, 2020. The record was not included in the transcript transmitted to the District Court (Tr. 23).

goal directed" and that there were no delusional thought processes (Tr. 459,460). Dr. York Anderson noted that Plaintiff could manage her own funds, if so assigned, and that her insight and judgment were fair (Tr. 461).

On November 6, 2019, Dr. Adrian Feinerman saw Plaintiff for a complaint of fibromyalgia (Tr. 464). Dr. Feinerman found no limitation of motion of any joint, grip strength that was strong and equal bilaterally, normal ambulation, no anatomic deformity of the cervical, thoracic, or lumbar spine, and no limitation of motion of any spinal segment (Tr. 469-470). He diagnosed discoid lupus, diabetes, and degenerative joint disease (Tr. 470) and noted, "[Plaintiff] is able to sit, stand, walk, hear, speak, lift, carry, handle objects, and can handle funds on her own behalf" (Tr. 471).

Plaintiff's primary care physician, Dr. Claire Williams, prepared a treating source statement in which she opined that Plaintiff would be off task over 25% of the time, can only maintain attention and concentration for 15 minutes or fewer, and would require more than 4 days off work per month (Tr. 741). Based on Plaintiff's lupus and fibromyalgia, Dr. Williams found that Plaintiff requires the option to sit/stand at will and can only sit or stand/walk for less than one hour per day (Tr. 742).

### State Agency Consultants' Opinions

The ALJ relied on two state consultants in his decision: On November 21, 2019, Dr. Ranga Reddy opined that Plaintiff could perform light work by occasionally climbing ramps, stairs, ladders, ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl (Tr. 72-73). Dr. Reddy further opined that Plaintiff has full range of motion of all joints and spinal segments, that her ambulation is normal, and that she had mild difficult with squatting and arising (Tr. 74).

On June 1, 2020, Dr. Douglas Chang made similar findings with respect to Plaintiff's RTC and noted "Claimant is able to do exertional activities. Pain has been considered" (Tr. 91).

Two psychological state consultants were involved in determining whether Plaintiff was disabled. On June 2, 2020, psychologist Ellen Rozenfeld performed a mental residual functional capacity assessment and concluded "Claimant's ability to carry out tasks with adequate persistence and pace would be moderately impaired for complex tasks but adequate for completion of simple and detailed tasks" (Tr. 92). Psychologist Howard Tin agreed that Plaintiff is "capable of performing simple tasks" but added that she has difficulty in "interacting appropriately with the general public" and "is capable of performing one and two-step tasks" (Tr. 76).

## Discussion

The ALJ did not adequately address the opinion of psychologist Howard Tin that Plaintiff was capable of performing one and two-step tasks (Tr. 76). An ALJ does not need to address every piece of evidence in the record or provide an explanation for every limitation he chooses to adopt. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). But they must explain why they excluded some of the limitations included in the opinion so that the Court can meaningfully review that decision. In this case, the ALJ's discussion of Howard Tin's opinion is very brief, and it is unclear whether he considered and dismissed or completely failed to consider Tin's finding. He simply noted, "The State agency psychological assessments are not persuasive," and analyzed the "mild" and "moderate" limitations without the remainder of the opinion that Plaintiff was limited to one and two-step tasks (Tr. 25). He failed to mention Tin's opined limitation of one and two-step tasks in his decision (Tr. 25).

Defendant appears to concede the ALJ's error but argues that it is harmless error because the VE identified a "significant number of jobs in the national economy that Plaintiff could have performed were she limited to one to two-step tasks" (Doc. 18, p. 22). However, a limitation of one and two-step tasks would have "significant impact on the disability determination" and would potentially limit Plaintiff to only a sorter job. Given that such a limitation significantly affects the analysis, a remand is appropriate because it is not evident that substantial evidence supports the ALJ's finding. *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (remanding for further analysis where failure to consider a hand impairment resulted in only employment as a security guard being available to the claimant).

For the foregoing reasons, remand is appropriate in this case for the ALJ to clarify the task-based restriction he intended to adopt and to address Howard Tin's finding. Because the Court has determined that remand is necessary, it need not address Plaintiff's remaining arguments. Plaintiff may raise those issues directly with the ALJ on remand.

Separately, Plaintiff argues that the structure of the Social Security Administration violates the separation of powers because 42 U.S.C. § 902(a)(3) limits the President's ability to remove the Commissioner of the Social Security Administration without cause, and therefore, invalidates the ALJ's denial of her benefits. The Commissioner agrees that 42 U.S.C. § 902(a)(3) is unconstitutional by limiting the President's ability to remove the Commissioner without cause (Doc. 18, p. 2). That said, Plaintiff is only entitled to relief if she can demonstrate a connection between the limitation on the President's removal power and the denial of her application for disability benefits. See, *Collins v. Yellen,* 141 S. Ct. 1761, 1787 (2021). Because Plaintiff has demonstrated no such connection, her argument fails.

## Conclusion

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.[2]

**IT IS SO ORDERED.**

**DATED: August 30, 2022**

**STACI M. YANDLE**
**United States District Judge**

---

[2] This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. The Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.